STEWART (WILSON v.). See Case No. 17,-837.

STEWART, The MARY. See Case No. 9,-227.

## Case No. 13,439.

### In re STICKNEY.

[5 Dill. 91; 17 N. B. R. 305; 5 Reporter, 586; 6 Cent. Law J. 265.] [1]

Circuit Court, E. D. Missouri. March, 1878.

BANKRUPT ACT—MEANING OF "TRADESMAN"—DISCHARGE.

1. The word "tradesman," in section 5110 of the Revised Statutes of the United States, has a very limited signification. The expression is imported from the English bankruptcy act, and means a small merchant or shopkeeper.

2. Where a firm which became bankrupt had been, as large stockholders, connected with, and were the principal officers of, a manufacturing corporation not in bankruptcy: *Held*, that such connection did not of itself constitute the bankrupts merchants or tradesmen; and that, although outside of the business of the corporation they borrowed largely and owned a farm, and carried on business in connection therewith, but did not carry on any business of merchandising, or hold themselves out to the community as merchants, they were not "merchants or tradesmen" within the meaning of the law, and their failure to keep "proper books of account" was not ground for refusing a discharge in bankruptcy.

[Cited in Re Moss, Case No. 9,877; Re Kimball, 7 Fed. 462.]

This was an appeal from the district court of the United States for the Eastern district

of Missouri, brought to this court on a petition for review filed by the bankrupt. Seven specifications were filed in the district court against the discharge of the bankrupt, all of which, with the exception of the fifth, were overruled by the district court. The fifth specification was based on the seventh sub-division of section 5110 of the United States Revised Statutes, which provides that no discharge shall be granted, or, if granted, shall be valid, "if the bankrupt, being a merchant or tradesman, has not, at all times after the 2d day of March, 1867, kept proper books of account." The district court held that the bankrupt was a merchant or tradesman within the meaning of the bankrupt act, and that he had failed to keep proper books of account, as prescribed by said act, and, accordingly, refused to grant a discharge to f: bankrupt. [Case unreported.] The bankrupt was a partner of one E. T. Merrick, under the firm name of Merrick & Stickney, both of whom were adjudged bankrupts. The discharge of both bankrupts was refused, on the ground above stated, and Mr. Merrick having meanwhile died, Mr. Stickney appealed to this court. Merrick & Stickney were adjudged bankrupts on a creditors' petition filed in November, 1873. The character of their business was disclosed by the testimony of Mr. Merrick on the hearing of the opposition to the discharge. That testimony was, so far as material to the point decided, as follows, to-wit: "Mr. Stickney and myself came to St. Louis in the year 1858 and formed a law copartnership, and practiced law for about a year. We then quit the law business and directed our attention to the buying of and dealing in land warrants. We were partners from the time we came to St. Louis until our bankruptcy, in 1873. Our business since 1866 has been exclusively that of farmers and manufacturers. From 1859 to the end of 1866 we dealt largely in land warrants and government vouchers. We had many friends in the East who loaned us money with which to carry on this business. These friends could get only six or seven per cent interest on their money in the East, and we allowed them ten per cent on the moneys they advanced. We entered a large amount of Kansas lands ourselves, and gave mortgages thereon to those who had advanced us money. We had a large tract of land in St. Charles county, Missouri, on the drainage of which we spent large amounts of money—between $20,000 and $30,000—which, at one time, made these lands of great value; but, owing to a blunder of engineering, these lands were flooded and became enormously depreciated in value. This loss and the financial panic of 1873 brought us to bankruptcy. These lands were farmed by myself and my partner, Mr. Stickney. We also owned land in Cahokia, Illinois, which we also farmed ourselves. Since 1866 Merrick & Stickney have not traded in land warrants,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 5 Reporter, 586, contains only a partial report.]

nor have we since then bought any lands— at least, we have not made a business of buying lands, but have since sold some of the lands we then owned. We have since then received loans, for which we gave mortgages on the lands owned by us, or secured such loans by pledges on our stock in the stoneware company; and we also received loans on our personal credit. Our business as manufacturers has been exclusively connected with the St. Louis Stoneware Company, a corporation organized under the laws of Missouri. Both Mr. Stickney and myself were officers of the corporation, and he and I were the principal stockholders. We have, since the organization of this company, in 1865, devoted the greater part of our time to the business of that company. That company kept separate books of account, entirely unconnected with the business of Merrick & Stickney. The company employed a regular bookkeeper, and its books have been regularly kept. Said company has not gone into bankruptcy, but still carries on business. The books of Merrick & Stickney, taken together, show all the moneys received and paid out, to the best of my belief. There may have, of course, been omissions, but if so, those omissions were entirely through inadvertence."

For the bankrupt it was contended (1) that neither he nor his firm were merchants or tradesmen within the meaning of the bankrupt law; and (2) that the books of account were properly kept. His counsel urged that a trader is one who makes it his business to buy merchandise, or goods and chattels, and to sell the same for the purpose of making a profit, and cited the following authorities on the first point: 2 Bouv. Law Dict. 604; Heane v. Rogers, 4 Man. & R. 486; Sutton v. Weeley, 7 East, 442; In re Cote [Case No. 3,267]; In re Ragsdale [Id. 11,-530]. And on the second point bankrupt's counsel cited the following authorities: In re Solomon [Id. 13,167]; In re Newman [Id. 10,175]; In re White [Id. 17,532]; In re Batchelder [Id. 1,098]; In re Winsor [Id. 17,-885].

For the opposing creditors it was contended that the bankrupt was a tradesman within the meaning of the law, and that the action of the district court in refusing the discharge was proper.

Seneca N. Taylor, for opposing creditors.
Walker & Walker, for bankrupt.

DILLON, Circuit Judge (orally). I am prepared to decide the Case of Stickney, before me on appeal from an order of the district court refusing to grant Mr. Stickney a discharge in bankruptcy.

It seems that for some years Merrick & Stickney were partners in this city. The record is a little meagre, but I gather from it this state of affairs: Merrick & Stickney were connected largely with a corporation formed under the statutes of the state, known as the St. Louis Stoneware Company, engaged in the business of manufacturing and selling stoneware; and they were the largest stockholders. Both bankrupts were officers—one president, and the other, I believe, secretary—of the corporation; and they were the largest, but not the only, stockholders. The corporation is not in bankruptcy, Merrick & Stickney being the bankrupts. Mr. Merrick is now dead. The district court refused Mr. Stickney a discharge solely on the ground that he was a tradesman, and had failed to keep proper books of account.

There were other objections to the discharge contained in the specifications, based on the ground of fraud. They were overruled as not being sustained, and no appeal was taken therefrom. But the fifth specification was to the effect that Merrick & Stickney did not keep proper books of account. The provision of the bankrupt act is that if any merchant or tradesman has not, since March 2, 1867—the date of the passage of the bankrupt act [14 Stat. 517]—kept proper books of account, it is sufficient ground of objection to his discharge. It makes no difference, under the bankrupt act, whether or not the failure to keep proper books is through inadvertence, negligence, or fraud; it is sufficient ground for refusing his discharge, provided the bankrupt is a merchant or tradesman.

From what counsel stated on the argument, the chief emphasis and stress in the court below was upon the question whether the books that were actually kept were proper books. I have not those books before me, and if the case turned on them I would be obliged to hold that there was not sufficient certainty that the books were proper books to justify a reversal of the decision of the district court. Accordingly, the case turns on the question whether, under the circumstances, these bankrupts were merchants or tradesmen within the meaning of the bankrupt act. Now, all that the record discloses in this behalf is this: These men were large stockholders, and were main officers, in a corporation formed for the purpose of carrying on the business of manufacturing and selling stoneware. Now, I conceive that whether or not that corporation kept proper books is perfectly immaterial here, and it has not been attempted to show that it did not keep proper books of account—and, indeed, it was stated by one of the witnesses that it did. No contest was made on that ground. Now, then, were these men tradesmen or merchants? It appears that, as to their business outside of their connection with this corporation, they owned a farm in St. Charles county, and carried on business in connection with that farm, and sustained heavy losses; and it also appears that they were in the habit of borrowing money. It seems when they failed they owed between $200,000 and $300,000, mostly evidenced by

promissory notes, and some certificates of deposit; but it did not appear that they carried on any business of merchandising, or held themselves out to the community in that capacity; and the authorities that were read here on the argument show, to my mind, quite conclusively, that, having imported this word "tradesman" from the English bankrupt act, it means—and has been so held by Judge Lowell, of Massachusetts (In re Cote, supra)—that the word "tradesman," as here used in the bankrupt act, has a very limited signification. It says, "if any merchant or tradesman fails to keep proper books of account." Now, the English authorities hold that a man who owned land, or a man who rented land and has held it for a term of years, and carried on the business of brick-making as a means of realizing the profits to be derived from his land, is not a "tradesman," and they have said that the word "tradesman," as used in the bankrupt act, refers to smaller merchants or tradesmen, or a shopkeeper. And this was the meaning put upon it by the decision of Judge Lowell; it means a smaller class- of merchants.

I think that, in the present condition of the law, it is very clear that Merrick & Stickney, so far as shown by this record, were not tradesmen. For this reason I will reverse the decision of the district court and order a discharge. Ordered accordingly.